# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| DAVID MEYERS, | ) | |
| :--- | :--- | :--- |
|     Plaintiff, | ) | Civil Action No. 7:19cv250 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| T.W. HALL, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

| DAVID MEYERS, | ) | |
| :--- | :--- | :--- |
|     Plaintiff, | ) | Civil Action No. 7:19cv406 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MANIS, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

| DAVID MEYERS, | ) | |
| :--- | :--- | :--- |
|     Plaintiff, | ) | Civil Action No. 7:19cv496 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CARL MANIS, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

| DAVID MEYERS, | ) | |
| :--- | :--- | :--- |
|     Plaintiff, | ) | Civil Action No. 7:19cv558 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CARL MANIS, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

| DAVID MEYERS, | ) | |
| :--- | :--- | :--- |
|     Plaintiff, | ) | Civil Action No. 7:19cv605 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J. ELY, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

| | | |
|---|---|---|
| DAVID MEYERS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18cv603 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JACOB LEW, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

Pending before me are the six civil complaints listed above, all of which were brought by the same plaintiff, David Meyers, and assert claims pursuant to 42 U.S.C. § 1983.[1] All have been assigned to me. Although they are not identical, they have overlapping or intertwined allegations and many of the same defendants.

Meyers is a three-striker under 28 U.S.C. § 1915(g), having had at least three cases dismissed as frivolous before each of these cases was filed.[2] *See, e.g.*, *Meyers v. Jones*, No. 7:18cv414 (W.D. Va. Nov. 2, 2018) (dismissed with prejudice as frivolous and malicious); *Meyers v. Clarke*, No. 7:18cv460 (W.D. Va. Nov. 2, 2018) (dismissed with prejudice as frivolous and malicious); *Meyers v. U.S. District Court, Big Stone Gap Division*, No. 7:18cv472 (W.D. Va. Nov. 2, 2018) (dismissed with prejudice as frivolous); *Meyers v. Northam*, No. 7:18cv473 (W.D. Va. Nov. 2, 2018) (dismissed with prejudice as frivolous); *Meyers v. U.S. District Court, Roanoke Division*, No. 7:18cv474 (W.D. Va. Nov. 2, 2018) (dismissed with prejudice as frivolous); *Meyers v. Clarke*, No. 7:18cv435 (W.D. Va. Sept. 7, 2018) (dismissed with prejudice as frivolous); *Meyers v. United States District Court Richmond Division*, No. 2:07cv363 (E.D. Va. Nov. 1, 2007) (dismissed with prejudice for failing to state a claim upon which relief may be

---

[1] Meyers has one other pending case before me, *Meyers v. U.S. Marshal's Service,* No. 7:19cv572, which was filed as a petition for writ of mandamus and will be addressed by separate order.

[2] The earliest filed of these six cases, *Meyers v. Lew*, No. 7:18cv603, was signed by Meyers on October 11, 2018, and was docketed by the United States District Court for the District of Columbia on November 9, 2018. It was sealed by that court in its entirety and then transferred to this court on December 3, 2019. Meyers filed several Notices of Appeal in the case in the months that followed. After the United States Court of Appeals for the Fourth Circuit dismissed his appeal (Dkt. No. 20), the case was transferred to me on August 2, 2019 (Dkt. No. 24).

granted and as frivolous); *Meyers v. Bass*, No. 2:95cv774 (E.D. Va. Aug. 15, 1995) (dismissed without prejudice as frivolous). *See also McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (noting dismissals without prejudice for frivolousness should not be exempted from 28 U.S.C. § 1915(g)). Accordingly, Meyers cannot proceed with this action unless he prepays the filing fee or demonstrates that he is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). Meyers has not prepaid the filing fee and, thus, I must determine whether he is under imminent danger of serious physical injury.[3]

In the interest of judicial efficiency, to conserve the resources of the parties and the court, and for the reasons discussed below, I conclude that, as to five of these cases, they should be referred to United States Magistrate Judge Hoppe for a consolidated hearing on the imminent danger inquiry. That referral will occur in the following cases: *Meyers v. Hall*, No. 7:19cv250, *Meyers v. Manis*, No. 7:19cv406, *Meyers v. Manis*, No. 7:19cv496, *Meyers v. Manis*, No. 7:19cv558, and *Meyers v. Ely*, No. 7:19cv605. With regard to the other case—*Meyers v. Lew*, No. 7:18cv603—Meyers cannot show imminent danger and thus his request to proceed *in forma pauperis* will be denied and that case dismissed.

Additionally, to the extent that these cases name judges of this court, the clerk of court, or deputy clerks of this court as defendants, those defendants are immune for the actions alleged by Meyers, and the claims against them will be dismissed as frivolous.

In order to understand these rulings, it is helpful to have some background about now-resolved cases in which Meyers made similar or identical allegations of imminent harm, as well as a basic overview of the allegations in Meyers' complaints.

---

[3] These cases all predate the pre-filing injunction entered against Meyers. *See Meyers v. Roanoke U.S. Attorney*, No. 7:19cv573, Dkt. No. 10 (September 6, 2019 Order and Injunction). Thus, although many of Meyers' complaints would violate that injunction due to their presentation and/or content, I do not treat them as governed by the pre-filing injunction.

3

## I. PERTINENT DATES

At all times pertinent to these complaints, Meyers was an inmate either at Red Onion State Prison ("ROSP") or at Wallens Ridge State Prison ("WRSP"), where he is currently housed. According to Meyers' sworn testimony at evidentiary hearings held in December 2018 and February 2019,[4] he never came out of his ROSP cell B-410 from September 26, 2018 until his transfer to WRSP on November 20, 2018. Additionally, from the time he was at WRSP through at least February 22, 2019, he testified that he was in a single cell for 24 hours a day with no direct contact with any other inmates or correctional officers. (Report 3–4, Case No. 7:18cv485, Dkt. No. 109.) Based on these facts, another judge of this court previously found that Meyers was protected from all other inmates and ROSP staff at the time he filed his complaints in two prior cases, and so he had not shown he was in imminent danger. Because he was not under imminent danger of serious physical injury, he could not proceed *in forma pauperis*. Because he had not paid the filing fee, then, the cases were dismissed. (Case No. 7:18cv485, Dkt. No. 141; Case No. 7:19cv3, Dkt. No. 53)

Comparing the dates of his transfer to the filing dates of the complaints before me, only one of his complaints was filed while he was still at ROSP: *Meyers v. Lew*, No. 7:18cv603 (filed October 11, 2018). The remainder were filed ***after*** he was transferred to WRSP.[5] All of those

---

[4] United States Magistrate Judge Sargent held two evidentiary hearings—on December 27, 2018 and February 21–22, 2019—and issued a lengthy report and recommendation ("Report"), recommending that the district judge conclude Meyers had not shown he was in imminent danger of serious physical injury at the time he filed the complaints in those cases. (Case No. 7:18cv485, Dkt. No. 109.) The Report repeatedly references Meyers' lack of credibility and explained how some of his testimony was either inherently contradictory or contradicted by more credible record evidence. The Report was adopted by the presiding district judge in both cases.

[5] I use as the filing date the date that Meyers signed each complaint and certifies that he served it, although there are often delays between that date and the postmarked date on his envelopes. The other complaints' filing dates are as follows:
- Case No. 7:19cv250 (March 21, 2019);
- Case No. 7:19cv406 (February 23, 2019);
- Case No. 7:19cv496 (June 15, 2019);
- Case No. 7:19cv558 (July 10, 2019); and
- Case No. 7:19cv605 (August 28, 2019).

filed after his transfer refer to incidents at WRSP at least in conclusory terms, such as that unidentified WRSP inmates are trying to murder him.

## II. FACTUAL ALLEGATIONS IN CASES

In providing a brief overview of the claims in each case, I do not list the specific defendants for every claim in every case, but I note that there is some significant overlap of defendants between the cases.[6] By way of example only, Case No. 7:19cv406 identifies seventy-five different defendants. Case No. 7:19cv558 names approximately thirty-four of those same defendants, but also includes an additional thirty-six defendants.[7]

**A.    *Meyers v. Hall*, No. 7:19cv250, filed March 21, 2019**

Meyers' complaint in this case names as defendants five judges of this court and approximately eighteen other individuals, all employed by the Virginia Department of Corrections ("VDOC"). The VDOC employees are employed at the central office, ROSP, or WRSP. As is typical with his filings, Meyers' complaint groups together numerous claims and dates and it is not always clear what is being alleged against who. Many of his claims are related to his housing assignments and custody status, and he frequently alleges that inmates and/or correctional officers are trying to murder him and/or failing to protect him.

---

[6] Most, if not all, of Meyers' complaints do not comport with the Federal Rules of Civil Procedure concerning joinder. In each, he names numerous defendants and alleges various unrelated wrongs, sometimes suffered at different prison facilities. Meyers has been repeatedly advised that a complaint cannot properly join into one civil action multiple unrelated claims against multiple unrelated defendants, merely because all events occurred during his incarceration. *See, e.g.*, *Meyers v. Clarke*, No. 7:18cv273, Dkt. No. 6 at 5 n.1 (July 23, 2019 Order). Rule 20, for example, allows the joinder of several parties in one case, but only if the claims arose out of the same transaction or occurrence, or series thereof, and contain at least one question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a). At this time, because Meyers is a three-striker, I am going to focus first on whether he has sufficiently shown that he was in imminent danger of serious physical injury at the time he filed the complaint in each action. If any or all of his complaints satisfy that requirement and are permitted to proceed, misjoinder can be addressed at that time.

[7] Because Meyers sometimes spells names differently in different complaints, and because of differences in titles and first initials, it is not always possible to tell whether two defendants in two separate suits are the same person or different persons.

Meyers' claims in this action are numbered, although many of the numbered claims contain multiple allegations. Also, there is significant overlap between the claims. Nonetheless, this case gives a good overall sense of the claims and types of claims he is asserting in all of these cases. His claims are:

> 1a. Defendants tried to force him into general population on an unknown date, when he was supposed to be in protective custody.[8]
>
> 1b. On February 14 and 15, 2019, the evening pill nurse took his glasses to repair them, refused to repair them, and tried to give him another inmate's glasses. This caused him to fall on February 15, hitting his head on a sink.
>
> 2. Thereafter, the nurses refused to treat his head injury and it has caused him "severe pain." He asserts that his eyeglasses were taken to prevent him from seeing and representing himself in civil actions before this court. (Compl. 3, Dkt. No. 1.)
>
> 3a. Certain defendants are embezzling funds from his account.[9]
>
> 3b. Other defendants read his legal documents and ransacked his cell. The ransacking of his cell led him to fall and hit his head on the toilet from property they piled in the center of his cell floor.
>
> 4. On March 6, 2019, judges of this court—by refusing his requests for injunctive relief—and other defendants tried to force him to go to general population, where gang member inmates could attack and murder him. Other officers refused to sign his emergency grievance where he was challenging the order to go to general population. Other officers stole property from him and did not give him full meals and retaliated against him by filing disciplinary reports. His due process rights were also violated.
>
> 5a. In addition to retaliating by filing disciplinary offense reports for his refusal to go to general population, defendants retaliated for Meyers' filing of civil actions and his testifying against them regarding being forced to eat, drink, and ingest hazardous toxic paint mixed with mold, e-coli, and cobalt.

---

[8] In discussing who the defendants are, but not included in his claims or the facts of his claims, Meyers also states that he was supposed to be placed in protective custody on January 30, 2019, pursuant to the order of Chief Judge Chadwick of Wise County Circuit Court (who is not a defendant). He claims that he needed to be in protective custody due to "numerous inmates" making death threats to murder him. He also accuses a judge of this court of inciting "racist employees to force [him] to eat, drink, and ingest toxic paint and house [him] on 24-hour lockdown without justification." (Dkt. No. 1 at 2.)

[9] It is unclear if this is related to the allegations in Claim #6, in which he asserts that money is being removed from his account for disciplinary fines.

5b. Certain defendants tried to incite hundreds of inmates to murder him by giving them unsealed copies of his civil actions in which he identifies himself as an FBI informant.

6. Other defendants refused to expunge at least nine disciplinary offense reports filed against him (including WRSP2019-0434), which he alleges were filed in retaliation for his reports of PREA violations or to "cover up serious physical injuries" ROSP employees caused him. As a result of the disciplinary offenses, he was deprived of good time credits. (*Id.* at 7.)

7a. Defendants refused to stop white supremacist employees from causing him head injuries on the following dates: February 8, 2017, May 1, 2017, July 19, 2018, February 15, 2019, and February 23, 2019.

7b. Defendants deprived him of the opportunity to earn good time credits and are "retaliating on [him] for being in protective custody for [his] safety." (*Id.* at 10.)

7c. The judicial defendants refused to enter injunctions requiring that he be moved to another protective custody unit for his safety.

(*See generally* Compl. 1, Dkt. No. 1.) Because his complaint contains at least conclusory allegations that he is under imminent danger of serious physical injury, I will refer this matter to Magistrate Judge Hoppe to make a recommendation on that issue.

As to the claims against the judges and judicial employees (whether named in this case or the other cases), however, I will dismiss them as frivolous because those defendants are immune from suit for their actions as alleged by Meyers.[10] As to the judges, judicial immunity clothes judges with absolute immunity from liability in damages for their judicial or adjudicatory acts. *Forrester v. White*, 484 U.S. 219, 225–26 (1988). Judicial immunity is an absolute defense, not merely to liability or damages, but a defense to suit under 42 U.S.C. § 1983. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are two possible exceptions to judicial immunity. Specifically, it does not shield a judge for (1) non-judicial acts; or (2) acts taken in the clear absence of all jurisdiction. *Mireles v.*

---

[10] In some of these other cases, in addition to judges of the court, Meyers names as defendants the Clerk of Court, Julia Dudley, as well as Deputy Clerk T. Taylor. Meyers asserts that they have improperly failed to file his lawsuits.

7

*Waco*, 502 U.S. 9, 11–12 (1991). Neither exception applies here. As to the first, the actions taken by the judges here (dismissing his cases, finding he was not in imminent danger, and refusing to order the injunctive relief he seeks) were all judicial acts, so that exception does not apply. These are clearly judicial acts because each of the challenged acts was "a function normally performed by a judge" and Meyers "dealt with the judge in his [or her] judicial capacity." *Mireles*, 502 U.S. at 12 (citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978) as identifying these two factors used to determine whether an act is a judicial one and concluding that a judge's alleged direction to the police to bring an attorney in the pending case before him and to use excessive force in doing so was a "judicial act," despite it being in excess of his authority).

In two of these cases (Case Nos. 7:19cv406 and 7:19cv496), Meyers' allegations against the judges are embellished with unsupported allegations that the judges accepted bribes from prison officials in exchange for judicial rulings against Meyers. I find these allegations—made against every judge of this court who has played any role in any of Meyers' cases—wholly frivolous, just as I find frivolous his claim that any judge of this court is "inciting" racist VDOC employees to harm him. *See McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are so nutty, delusional, or wholly fanciful as to be simply unbelievable.") Regardless, even as to these allegations, they are barred by judicial immunity. There is no allegation by Meyers that any of the defendant judges lacked jurisdiction to act, nor does he challenge any non-judicial act—he challenges judicial rulings as improper, corrupt and inciting behavior in others. Thus, his claims do not fall within either of the *Mireles* exceptions. Indeed, even where a plaintiff alleges that a judge acted corruptly, that judge is nonetheless entitled to judicial immunity if the *Mireles* exceptions do not apply. *See Dennis v. Sparks*, 449 U.S. 24, 29 (1980) (explaining that judge was immune from

8

civil liability even where party alleged that the judge accepted bribes from opposing parties to the lawsuit to rule in their favor).

Similarly, the Clerk of Court and deputy clerks are entitled to quasi-judicial immunity for the performance of "tasks so integral or intertwined with the judicial process that those persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). As another court has explained in a separate case brought by Meyers:

> "The basis for affording non-judicial officials absolute immunity is to avoid the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts." *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) (alteration in original) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)). Courts have therefore extended absolute immunity to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders. *See, e.g., Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988) (holding the clerk of court to be absolutely immune for issuing an erroneous warrant pursuant to the court's order); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238–39 (7th Cir. 1986) ("[Police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit")."

*Meyers v. Berryhill*, Civil Action No. CCB-18-3353, 2018 WL 5983381, at *4 (D. Md. Nov. 14, 2018) (quoting *Okere v. High*, Civil Action No. DKC 16-2152, 2016 WL 7405434, at *2 (D. Md. Dec. 22, 2016)).

Meyers' claims against the Clerk of Court and a deputy clerk are based on their manner of filing and docketing of legal papers, a task integral to the judicial process, or an alleged failure to perform that task. Thus, the claims against them are barred by the doctrine of quasi-judicial immunity and also will be dismissed as frivolous. The following defendants, therefore, will be terminated from any of these cases in which they are named as defendants: Judges Sargent, Ballou, Jones, Conrad, and Urbanski, Clerk Dudley, and Deputy Clerk Taylor.

**B.** *Meyers v. Manis*, No. 7:19cv406, filed February 23, 2019[11]

This case again names judges of this court, as well as the Clerk, and then names "All defendants in Civil Action Nos. 7:19cv3, and 7:18cv485." (Compl., Dkt. No 1 at 1.) Meyers claims that the judicial defendants committed fraud in failing to recognize that he was in imminent danger in those two previous actions, and he states that he is "refiling all claims in Civil Action Nos. 7:18cv485 and 7:19cv3" and "in their full exactness." (*Id.* at 2.)

The claims against the judicial defendants are dismissed as frivolous, as already explained. Nearly all of his remaining claims, as Meyers himself acknowledges, are the same exact claims brought in two prior lawsuits before this court, both of which have now been dismissed—Civil Action Nos. 7:18cv485, and 7:19cv3. *See supra* at Section I. But Meyers' complaint also adds new claims. At least one of these contains the same general language, completely lacking in specifics as to dates or names, that unidentified WRSP inmates "are continuing to try to murder [him.]" This allegation lends little support to his claim of imminent danger because it is disputed by his own testimony, mere days before he signed this complaint, that he had been held in a single cell for 24 hours a day with no direct contact with any other inmates or correctional officers since his arrival at WRSP on November 20, 2018 through at least his testimony on February 21 or 22, 2019. Nonetheless, in light of this allegation and his request to amend his complaint to add newer allegations of imminent danger (Dkt. No. 4), I will also refer this case to Judge Hoppe for a report and recommendation as to imminent harm.

---

[11] As noted, I use the date Meyers signed his complaints as the filing date, but their accuracy is questionable. In this case, for example, there are several months of unexplained delay between that date and the Clerk's receipt, assuming Meyers placed it in the prison mail on the date he signed it. The envelope containing the complaint was postmarked May 29, 2019, and it was received and docketed by the Clerk on May 31, 2019.

### C. *Meyers v. Manis*, No. 7:19cv496, filed June 15, 2019

Case No. 7:19cv496 asserts nearly the same claims against the judicial defendants as are in Case No. 7:19cv406, except that they also include the frivolous bribery allegations. For the reasons already discussed, the claims in this lawsuit against judges of this court and the Clerk of court will be dismissed as frivolous.

Meyers' remaining claims include allegations that certain defendants (including counsel for defendants in other cases, and some VDOC employees) tampered with one of his witnesses at the evidentiary hearing held in Case Nos. 7:18cv483 and 7:19cv3. He again alleges that "numerous inmates in WRSP" are making death threats to murder him for being an FBI informant, and that other defendants are refusing to provide him with protective custody. He then references again several incidents in which he sustained head injuries and was not given proper medical treatment. These include alleged actions by a defendant that caused him to fall and hit his head on his sink on February 15, 2019, and alleged actions by another defendant that caused him to fall and hit his head on his toilet on February 23, 2019.

He also asserts that an intel officer cut his left arm open on May 31, 2019. Thereafter, that defendant refused to treat him and other defendants refused to treat him for his head injuries, severe chest pains, ribs, shoulders, testicles, nine gunshot wounds, stomach cancer and poisonings.[12] (Dkt. No. 1 at 3.)

This case will be referred to Judge Hoppe for a recommendation as to the imminent danger issue.

---

[12] As discussed *supra*, another judge of this court has found that Meyers had not presented credible information that he was suffering from stomach cancer, as he admitted that was a self-diagnosis. Similarly, that judge found that the evidence did not support his claim about being poisoned with toxic paint. (Report 5, 42, 44–45, Case No. 7:18cv485, Dkt. No. 109.)

11

D.   *Meyers v. Manis*, No. 7:19cv558, filed July 10, 2019

Much like his other lawsuits, Meyers sues in this case various VDOC officials as well as judges of this court and court employees. As to the judges and court employees, they will be dismissed from this action based on judicial immunity and quasi-judicial immunity, for the reasons already discussed.

In addition to his claims against the judicial defendants, he alleges that there are unsafe and insecure chairs in D2 pod, which were installed "to torture [him]" and cause prisoners to break their necks. (Dkt. No. 1 at 2.) Meyers also claims that a named defendant has been trying to incite inmates to lynch and beat him to death for requesting protective custody and that a number of officers have engaged in retaliatory actions. Both WRSP employees and WRSP inmates are trying to murder him and making "unceasing" death threats. Kitchen inmates put oven cleaner in his food and tried to poison him. He again asserts that he has stomach cancer that is not being treated, that certain defendants have embezzled funds from his prison account, that his glasses were taken, causing him to hit his head on his sink or toilet on two occasions in February 2019, and that he has not had a shower nor recreation since August 29, 2018 at ROSP. This case, too, will be referred for a finding on imminent danger.

E.   *Meyers v. Ely*, Case No. 7:19cv605, filed August 28, 2019

In this case, Meyers asserts similar types of claims against many of the same defendants. He claims death threats were made by a number of prison guards on July 22, 2019 and August 8, 2019. He claims that defendants refused to transfer him to a protective custody unit, despite Wise County Circuit Court Judge Chadwick's order to do so. He repeats his allegations of "unceasing PREA retaliation, sexual abuses, sexual assaults, sexual violence, attempted murders on him," as well as the accounting fraud and failure to protect him from inmates who want to murder him since he arrived at WRSP on November 20, 2018.

This case also includes allegations that certain defendants failed to render aid or call for emergency medical services for Luther Early, another inmate, resulting in what Meyers calls Early's "murder" on August 11, 2019. He then claims that after he reported the murder, he and another witness to the murder, inmate Dammones, have been retaliated against, threatened, and poisoned. Lastly, he claims that certain defendants have also sprayed "excessive gas" through his cell's air vent in an attempt to murder him and, afterward, other defendants refused to extract him from his cell to allow him to decontaminate. This case, too, will be referred to Judge Hoppe for a report and recommendation on the issue of imminent danger.

**F.** *Meyers v. Lew*, **No. 7:18cv603, filed October 11, 2018 and entered by United States District Court for the District of Columbia on November 9, 2018**

Meyers filed this case in the United States District Court for the District of Columbia. That court granted his motion to seal the entirety of the case, and transferred the case here. In doing so, it made no finding as to whether Meyers "should be permitted to proceed without prepayment of the filing fee pursuant to the imminent danger exception in 28 U.S.C. § 1915(g)." (Dkt. No. 2 at 2.)

I conclude that Meyers' claims of imminent danger in this case are the same as the claims he made in Case Nos. 7:18cv485 and 7:19cv3.[13] Critically, the finding of no imminent danger in those two cases numbers, discussed *supra* at Section I, is also particularly salient as to this case. In those cases, the court considered whether Meyers was in imminent danger of serious physical injury on the following dates, which are the dates he submitted complaints in those actions: September 29, 2018, October 10, 2018, and October 25, 2018, and December 26, 2018. (Report at 2–3, 38, Case No. 7:18cv485, Dkt. No. 109 (discussing filing dates).) The court concluded that he was not in imminent danger on any of those dates.

---

[13] Because the case is under seal and this memorandum opinion is not under seal in any of the other cases, I do not discuss the specifics of the complaint.

Meyers signed his complaint in Case No. 7:18cv603 on October 11, 2018, and it was received by the court on November 9, 2018. The rulings in the prior cases were that he was not in imminent danger of serious physical injury on a number of dates between and including September 29, 2018 and December 26, 2018, which period includes all of the dates from October 11 through November 9. Thus, regardless of what date in between October 11 and November 9 I were to use as the filing date, a court determination has already been made that Meyers was not in imminent danger on those dates. Notably, moreover, the complaint in Case No. 7:18cv603 contains no additional facts to support Meyers' claim of imminent danger other than what Meyers presented at the hearings—assertions already rejected by the court in Case Nos. 7:18cv485 and 7:19cv3. In light of that timing, and the lack of any additional or different facts in the new complaint, I conclude that the inquiry here is controlled by the outcome in the earlier cases. Put differently, the factual issue of whether Meyers was in imminent danger when he filed this case, so as to satisfy Section 1915(g), has been fully litigated and decided by this court against Meyers in the prior action. Thus, Meyers is collaterally estopped from rearguing that factual issue in this case, particularly given the lack of any new allegations to support his assertion of imminent danger. *Cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328–29 (1979) (explaining that collateral estoppel generally applies where a party has fully and fairly but unsuccessfully litigated an issue in a prior suit).

Accordingly, I will deny Meyers' request to proceed *in forma pauperis*, deny all pending motions, and strike the matter from the active docket of the court.

## III. CONCLUSION

For the foregoing reasons, five of these cases will be referred to Magistrate Judge Hoppe for a report and recommendation as to the issue of imminent danger; the sixth will be dismissed, and all claims against the judicial defendants will be dismissed as frivolous.

Appropriate orders will be entered.

**ENTER**: This 23rd day of October, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE