# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **DAVID MEYERS,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:19-cv-250** |
| | ) | |
| **v.** | ) | <u>**ORDER ADOPTING REPORT AND**</u> |
| | ) | <u>**RECOMMENDATION**</u> |
| | ) | |
| **T.W. HALL,** *et al.,* | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **Senior United States District Judge** |

---

| | | |
|---|---|---|
| **DAVID MEYERS,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:19-cv-406** |
| | ) | **Civil Action No. 7:19-cv-496** |
| | ) | **Civil Action No. 7:19-cv-558** |
| **v.** | ) | |
| | ) | <u>**ORDER ADOPTING REPORT AND**</u> |
| | ) | <u>**RECOMMENDATION**</u> |
| **CARL MANIS,** *et al.,*[1] | ) | |
| **Defendants.** | ) | **By: Norman K. Moon** |
| | ) | **Senior United States District Judge** |

---

| | | |
|---|---|---|
| **DAVID MEYERS,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:19cv605** |
| | ) | |
| **v.** | ) | <u>**ORDER ADOPTING REPORT AND**</u> |
| | ) | <u>**RECOMMENDATION**</u> |
| | ) | |
| **J. ELY,** *et al.,* | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **Senior United States District Judge** |

---

I referred these matters to United States Magistrate Judge Joel C. Hoppe for proceedings as necessary and a report and recommendation concerning whether plaintiff David Meyers was under imminent danger of serious physical injury when he filed these actions. (Dkt. No. 10.)[2]

---

[1] Manis is the first named defendant in each of these three cases; the other defendants are not identical across all three cases.

[2] Unless otherwise noted, references to documents that may appear in multiple cases are to Case No. 7:19-cv-250. Meyers has filed identical objections in all five cases, and many of his motions have been filed in all five cases, as well.

As noted in the memorandum opinion accompanying my order of referral, Meyers had at least three cases dismissed as frivolous before each of these cases was filed, and he is thus subject to the provisions of 28 U.S.C. § 1915(g). (Dkt. No. 9 at 2–3.) That provision requires Meyers to either prepay the filing fee in these civil actions or demonstrate that he is under "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Because Meyers has not prepaid the filing fee in any of these cases, he must make the required showing to proceed. *See id.*

On December 19 and 20, Judge Hoppe held a two-day evidentiary hearing to take evidence on that issue. Meyers appeared at that hearing, testified at length, called his own witnesses and submitted documents into evidence, and cross-examined witnesses called by counsel from the Office of the Attorney General, who had noted an appearance in the cases.[3]

Thereafter, Judge Hoppe issued a Report and Recommendation ("Report"). (Dkt. No. 59.) In it, he discusses the evidence from the hearing and addresses separately twelve different potential claims of imminent physical harm as alleged by Meyers. He recommends that "the district court find . . . that Meyers was not under imminent danger of serious physical injury at the time he filed any of these complaints." (Report 34.) He further recommends that "the district court deny Meyers's motions to proceed *in forma pauperis*, dismiss these actions without prejudice, and deny all pending motions as moot." *Id.*

Meyers has filed timely objections to the Report and also has filed two separate motions requesting related relief, which I address first. For the reasons set forth below, I will deny Meyers's two recent motions, overrule Meyers's objections, adopt the Report, deny Meyers leave to proceed *in forma pauperis*, deny all remaining pending motions as moot, and dismiss these actions without prejudice.

---

[3] As the Report and Recommendation does, I refer to evidence presented and arguments made by those attorneys as being by "defendants," although no defendants have yet been served. (*See* Report 2 n.2.)

# I. RECENT MOTIONS BY MEYERS

Before turning to Meyers's objections to the Report, I address first two related motions

that he filed at the same time he submitted his objections.[4]  In the first (Dkt. No. 62), Meyers

asks for the court to "redact any references in his grievances or other exhibits that allege any

wrongdoing by judges of the court."  He appears to be under the mistaken impression that those

documents will not be considered if they contain such allegations because those grievances

would be in violation of the court-wide injunction concerning Meyers's court filings.[5]  Similarly,

in his second motion, he asks that the court "waive" the injunction against him, so that other

exhibits may be considered, despite the fact that they do not have one-inch margins, as required

by the injunction.  (Dkt. No. 63.)

The relief requested in these motions is not necessary.  As Judge Hoppe ruled when

Meyers requested similar relief at the hearing, grievances and other exhibits would not be

excluded or stricken, even if they would, if filed by Meyers directly in one of his cases, violate

the pre-filing injunction.  (Day 1 Tr. at 15–18, Dkt. No. 53).  As Judge Hoppe explained,

---

[4]  Subsequent to the issuance of the Report, Meyers also sent a letter addressed to the Chief Judge of this court, which was forwarded to the Chief Judge.  (Dkt. No. 60.)  Because that letter does not ask for any relief from me, I do not issue any ruling on it.  I note, however, that Meyers's statements therein largely track arguments in his prior motions for recusal—all of which have been denied—that Judge Hoppe and I have a racial or other bias against him.  He also argues that I should have recused myself because he has allegedly filed judicial misconduct complaints against me.  First of all, neither the Fourth Circuit nor any other entity within the federal courts has advised me that any such complaints have been filed.  This factual contention also is undermined by Meyers's own references to another of his lawsuits in which he accuses the Circuit Executive of the Fourth Circuit of "covering up" his judicial misconduct complaints.  (Dkt. No. 60 at 1 (citing *See Meyers v. United States*, No. 2:20-cv-00045 (E.D.Va.).)  In any event, the filing of a judicial misconduct complaint does not, by itself, require recusal.  *See In re Mann*, 229 F.3d 657, 658–59 (7th Cir. 2000); *see also Richardson v. Stanford*, No. 7:16-cv-00329, 2017 WL 1102715, at *2 (W.D. Va. Mar. 23, 2017) (denying recusal despite plaintiff's filing of a judicial misconduct complaint and reasoning that allowing a party to obtain recusal "by formalizing his disagreement [with the judge's rulings] as a judicial misconduct complaint" would render meaningless the recusal requirement that the source of a judge's bias be personal and not judicial) (citations omitted).

[5]  *Meyers v. Roanoke U.S. Atty*, No. 7:19-cv-573, Dkt. No. 10 (Sept. 6, 2019 Order and Injunction).  Among other provisions, that injunction prohibited Meyers from filing any documents containing "irrelevant scandalous, vulgar, obscene, threatening, or vituperative language or allegations," and also required that documents "[b]e written on only one side of the page, with one-inch margins on all sides."  *Id.*, ¶ 2.  Meyers repeatedly refers to the injunction as "retaliatory" and improper and he appealed it to the Fourth Circuit, but that appeal was dismissed based on his failure to prosecute it.  *Meyers*, No. 7:19-cv-573, Dkt. Nos. 12, 21, 22.

allowing such exhibits at the hearing would not violate the injunction. Indeed, many pages of his grievance-related documents were admitted for the limited purpose of showing notice. (Day 2 Tr. at 39–40, 42–43.) Thus, to the extent they were otherwise admitted, Meyers's grievances need not be redacted and are part of the record from the evidentiary hearing, as noted in the Report. (Report 27.) Likewise, none of the exhibits admitted at the hearing require a "waiver" of the injunction based on their lack of one-inch margins. Not only were many of those documents prepared before the injunction ever issued, but as exhibits introduced at the evidentiary hearing, they are not subject to the injunction on Meyers's filings. Indeed, they already have been admitted and are part of the record.

In short, in reviewing the Report and Meyers's objections to it, I have considered all of the exhibits and none of them are being struck as violative of the pre-filing injunction against Meyers. Thus, Meyers's motion to redact (Dkt. No. 62) and motion to waive (Dkt. No. 63) will be denied as unnecessary.

## II. DISCUSSION

### A. Standard of Review

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) (finding that de novo review of the magistrate's report and recommendation comports with due process requirements).

In order for an objection to trigger de novo review, it must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*,

337 F.3d 411, 416 n.3 (4th Cir. 2003). Further, objections must direct the court to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id.*

I have reviewed the Report, but find it unnecessary to repeat its content in any detail. In sum, the Report identified twelve claims of "imminent danger of serious physical harm" alleged by Meyers, explained the evidence from the hearing, and discussed why that evidence did not support any conclusion that Meyers was in imminent danger of physical harm at the times he filed these complaints. (*See generally* Report.)

Notably, Meyers does not object to any of the Report's legal principles or their application to the facts here (*see especially* Report 27–28, 30–31, 32) and I do not find them erroneous, clearly or otherwise. Instead, the Report correctly states the legal standards applicable to the inquiry of whether Meyers was under "imminent danger of serious physical injury" when he filed his complaints. (*See id.*) Likewise, as to any un-objected to portions of the Report, they are not clearly erroneous. I turn next to Meyers's objections.

### B. Meyers's Objections

#### 1. General and Conclusory Objections of Bias, Racial Discrimination, and Retaliatory Motive

Many of Meyers's objections are the same type of general accusations that have littered Meyers's filings throughout these cases: accusations with no supporting facts that Judge Hoppe, I, or others involved in the court process, including opposing counsel, are racially biased against him, part of a "terrorist" organization, or are otherwise conspiring with "white supremacist" defendants so they can continue to try to "sexually assault" or murder him. (*See, e.g.*, Objs. 5, 7; *see generally* Objs. (containing similar allegations throughout).) Meyers also claims that Judge Hoppe has a "vendetta" against him (Objs. 3), that Judge Hoppe and I are "not impartial," (*id.* at

4), and that we have "premeditatively planned retribution on him for filing complaints against other judges of this court," (*id.*). He claims, without any facts, that Judge Hoppe and defense counsel were colluding, (*id.* at 2), and that Judge Hoppe is protecting "his friend," one of defendants' counsel, (*id.* at 6). His accusations even extend to the court reporter from the hearing, who he alleges is "in on the collusion." (*Id.* at 7.)[6] At one point, he accuses everyone present in the courtroom during the hearing of being "racially angered" and "disgruntled," which he confusingly attributes, in part, to his being an "unlicensed attorney who has been practicing civil law for 32 years" with "elite" grammar and speaking abilities. (Objs. 2–3.)

To the extent these types of unsupported and conclusory allegations merit any response, I find no basis in the record for any of these accusations, and Meyers points to no credible factual matter to support his conclusory allegations. To the extent he seeks recusal, Judge Hoppe and I have both previously addressed his requests for us to recuse, and we both have denied those requests. (Dkt. Nos. 35, 56; *see also Meyers v. Roanoke U.S. Attorney*, No. 7:19-cv-573 (W.D. Va.), Dkt. No. 16 (October 23, 2019 Order).).

I deny Meyers's recusal request again here. As was the case before, Meyers has not pointed to any *facts* that suggest a personal bias against him by me or by Judge Hoppe. He clearly wants his cases assigned to other judges, but the Fourth Circuit has repeatedly cautioned that recusal is not required "simply because of unsupported, irrational or highly tenuous speculation." *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) (citation omitted); *see also United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998) (citation omitted). Indeed, recusal motions alleging personal bias should not be permitted without a proper showing.

---

[6] I do not believe that Meyers is alleging that the transcripts from the hearing are inaccurate or otherwise fabricated, nor is there any foundation for such an allegation. Indeed, he states that he should have been sent a copy of the transcripts "to verify that they are authentic court testimonies," (Objs. 6), although he never filed a motion seeking the transcripts after the Report was issued. Rather, he it appears he contends that the court reporter worked with Judge Hoppe to stop Meyers from cross-examining witnesses or to strike his questions. (*See* Objs. 7.)

Otherwise, parties will "too easily [be able to] obtain[] the disqualification of a judge, thereby potentially manipulating the system for strategic reasons." *Belue v. Leventhal*, 640 F.3d 567, 574 (4th Cir. 2011) (citation omitted). Meyers has not provided any factual support in his objections to cause me to believe that recusal is now warranted. *See Cherry*, 330 F.3d at 665; *see also supra* note 4.

Meyers's other objections fall broadly within three other categories, which I address in turn: (1) objections to Judge Hoppe's credibility determinations or general assertions that Judge Hoppe reached the wrong result; (2) objections to evidentiary rulings during the hearing or to the manner in which Judge Hoppe conducted the hearing; and (3) pre- and post-hearing rulings by Judge Hoppe, primarily the striking of various documents filed by Meyers in violation of an order prohibiting him from filing documents pending the issuance of the Report.

### 2. Objections to Credibility Determinations and the Overall Result

Meyers's first category of objections includes general assertions that Judge Hoppe's credibility determinations are unsupported and that the Report reaches the wrong result. For example, Meyers refers generally to Judge Hoppe making incorrect determinations as to his allegations of imminent danger, (Objs. 3, 6–7), and "falsifying and fabricating false testimonies" of the witnesses (*id.* at 5). As to credibility, Meyers contends, again in mostly general terms, that he significantly undermined the credibility and testimony of defendants' witnesses. (Objs. 3 (insisting that he "severely impeached the 5 defendants' witnesses and made them confess to [his] claims of imminent danger"); *see also* Objs. 8 (accusing the court reporter of being upset with him because of his "talents and skills at getting the defendants to admit that they were giving false testimony"; referencing that he "sank" defendants' counsel's "titanic ship of false testimony witnesses"); *id.* (asserting that he impeached all the defense witnesses and overheard defendant's counsel tell a potential witness that Meyers was "demolishing" witnesses on cross-

examination).)

As to these general types of credibility determinations—and with the very few exceptions discussed below—Meyers does not identify any specific ways in which the testimony of witnesses were impeached, or any specific portions of the testimony of his witnesses that he believes Judge Hoppe misrepresented. For example, he states that his witnesses did not testify in the way that Judge Hoppe said they did, but he does not identify any specific testimony by his witnesses that he believes Judge Hoppe misrepresented. Moreover, Judge Hoppe repeatedly cites to the transcripts for support, and the transcripts reflect the testimony as described by Judge Hoppe. Thus, to the extent that these objections are sufficiently specific to trigger de novo review, I overrule them, finding them meritless.

Where a party objects to a magistrate judge's credibility determinations, the district court must conduct a de novo determination on credibility, but need not "rehear the contested testimony." *United States v. Raddatz*, 447 U.S. 667, 674 (1980). "To conduct proper *de novo* review when testimony calling into question a witness's credibility is dispositive of a case," the district court must "consider[] the actual testimony"; thus, reviewing only the magistrate judge's report is insufficient. *Johnson v. Knable*, 934 F.3d 319, 1991 WL 87147, at *1 (4th Cir. May 28, 1991) (unpublished). *Cf. United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (holding that a magistrate's credibility determinations based on live testimony are entitled to deference "where they are supported by the record as a whole").

Having reviewed the hearing transcripts—and even without the benefit of directly observing witnesses—I agree with the credibility determinations in the Report. In general terms, many of Meyers's assertions are, indeed, "fantastic," "delusional" or "wholly incredible," as the Report points out. (Report 28–31.) And Judge Hoppe's other credibility determinations are fully supported by the transcripts and exhibits. I further find that, contrary to Meyers's repeated

assertions, defendants' witnesses were not shown to be lying, nor their credibility destroyed. At most, a few of them were mistaken, or failed to recollect, unimportant details about Meyers's many complaints and grievances.

Meyers seems to believe that his questions impeached witnesses, regardless of the answers to them, because his questions implied that the witness was lying. But the actual responses from the witnesses frequently did not provide the testimony that he had clearly expected. It is true, and Judge Hoppe noted in his Report, that there were a few instances where Meyers was able to show that a portion of a witness's testimony was contradicted, or arguably undermined, by some document in the case. (*See, e.g.*, Report 23–24 n.21.) But Meyers does not point to *any* testimony fundamentally calling into question either the credibility or the testimony of defendants' witnesses, as it relates to the issue of imminent danger and the reasoning of the Report.

As noted above, Meyers identifies a few specific references to testimony that he believes Judge Hoppe incorrectly assessed, and I address those now. First, he contends that his cross-examination of Dr. Mullins called into question his credibility and showed that Dr. Mullins was "mentally disabled" and "lying." (Objs. 7.) Reviewing this objection de novo, I cannot agree that Meyers's questioning impeached Dr. Mullins in any way.

To be sure, Meyers asked questions in an apparent attempt to impeach Dr. Mullins— many of which Judge Hoppe sustained objections to—but Dr. Mullins responded in the negative, even to those questions that were struck. For example, Meyers asked whether Dr. Mullins had Parkinson's disease, suffered from eye or retina problems, had ever had "revocation proceedings for endangering the safety of a patient," "practice[d] his own homegrown style of medical treatment," and failed to send Meyers for treatment for his alleged head injuries because he is black. (Day 2 Tr. at 214–16, 219–20, 221–22, 231–32.) To each of these, Dr. Mullins

responded in some negative fashion (either saying no, responding that he had not said that, or denying the matter). (*See, e.g.*, Day 2 Tr. at 220 ( "That has nothing to do with your skin color . . . That has to do [with] your minor injuries."). Meyers also attempted to chastise Dr. Mullins for not owning or referring to a certain treatise before prescribing medications, but Dr. Mullins reasonably explained that he did not have a copy of that reference, that it is "out of date," and that he was not aware of anyone using it "anymore." (Day 2 Tr. at 215.) Meyers did not show otherwise. Lastly, Meyers suggested at the hearing that Dr. Mullins lacked credibility because he could not remember "all the dates" that he saw Meyers and "when [Meyers] had this and that." (Day 2 Tr. at 222.) After being permitted to review Meyers's medical records, though, Dr. Mullins was able to identify specific dates that he treated Meyers. (Day 2 Tr. at 222–24.)

Having reviewed the entirety of Dr. Mullins's testimony (and Nurse Townsend's), I agree with Judge Hoppe's decision to credit "the objective observations" reflected in the medical records and the testimony of Nurse Townsend and Dr. Mullins, "which establish that Meyers has not suffered from serious physical injury while housed at WRSP, and he has not sustained any serious head injury or poisoning or other exposure to hazardous materials." (Report 30.) Their testimony and the records also support that Meyers does not have stomach cancer or bedsores, as he claims. (Report 28–29.) And Meyers's objections to the treatment of Dr. Mullins's testimony (*e.g.*, Objs. 7–8) do nothing to undermine that conclusion.

Second, Meyers contends that Judge Hoppe is "lying" in stating that Davis Harris testified that he did not cut Meyers's arm. (Objs. 8; *see* Report 22 (noting that "Harris flatly denied" the allegation that he cut Meyers's arm while delivering mail and quoting from the Day 2 Tr. at 110).) There is no error in that statement. The transcript reflects the following exchange during Harris's direct examination:

> Q: Are you aware of an incident that occurred on May 31st of 2019 involving you cutting Mr. Meyers?

A:  I delivered –

[Mr. Meyers then objected to the question as leading, and his objection was overruled.]

A        I delivered legal mail on May the 31st to Mr. Meyers.  I never cut Mr. Meyers, never harmed Mr. Meyers, or any such thing.

(Day 2 Tr. at 109–10.)

Third, Meyers contends that Nurse Townsend was not credible, because she admitted on cross-examination that she had answered Meyers's grievances and signed them, which he says shows "them denying me medical services."  (Objs. 8.)  It is true that Nurse Townsend initially testified that she did not recollect seeing a grievance from Meyers stating that the medical escort officers were refusing to let him wash urine and feces from his body.  (Day 2 Tr. at 199–200.)  After being shown a grievance signed by her in which he made that complaint, however, she agreed that she must have seen such a grievance.  But her statement that she did not "recollect" having seen such a grievance is not inconsistent with her remembering it after being shown the grievance with her signature. Her recollection was refreshed.  And her inability to initially recall one grievance out of many from a repeat filer is unsurprising—and indeed, witnesses described Meyers as a prolific filer of informal complaints, grievances, and PREA complaints.  Given his prolific filings in this court and others—that too is unsurprising. Moreover, the fact that Nurse Townsend knew Meyers was complaining in a grievance about not being allowed to wash—or even more generally about being denied medical services—is not an admission by her that either of those things are true.  Put differently, the mere fact that Meyers complained in a grievance about something does not make his complaint in the grievance true; it merely means that he complained.  Meyers's arguments at the hearing and in his objections (in which he seems to

11

suggest that his grievances would prove his claims of imminent harm) reflect a fundamental misunderstanding about this issue.

Fourth, Meyers states that witness Young "testified that he had given false testimony (Objs. 8)," although Meyers does not identify that testimony. Based on a review of Young's testimony, it is likely that Meyers is referring to Young's testimony concerning enemy summary forms. Specifically, he testified on direct examination as follows:

> Q:     Okay. Have you ever refused to provide Mr. Meyers with enemy summary forms?
>
> A:      No. I don't know that I've ever been asked to provide an enemy summary form. I don't know if that's something they do. Like I said, generally, he would just write a request or open up some sort of dialogue with us, and that's how we'd go about.

(Day 2 Tr. at 140–41.) Similarly, on cross-examination, Young said that he was not required to bring Meyers enemy summary forms, and he also denied that he had received an informal complaint about refusing to provide the forms to Meyers. (*Id.* at 149, 160.)

Thereafter, Meyers later showed Young a grievance which, although it was not signed by Young, complained that Young had refused to give Meyers enemy summary forms, and another grievance signed by Young making similar complaints. (Day 2 Tr. at 160–64 & Pl.'s Ex. 3.) This issue, however, was noted in the Report, and Judge Hoppe correctly reasoned that "even if it is true that Young denied Meyers enemy summary forms, that does not translate into a risk of imminent harm to Meyers, who is housed in restricted housing and is fully protected from other inmates." (Report 23–24 n.21.)

In short, the specific credibility objections made by Meyers fare no better than his general ones. Reviewing de novo, I conclude that the Report's credibility determinations are correct.

**3.      Objections to the Manner in Which Judge Hoppe Conducted the Evidentiary Hearing and His Evidentiary Rulings**

Meyers's next category of objections relate to Judge Hoppe's alleged actions during the evidentiary hearing: striking or limiting Meyers's direct and cross-examinations; erroneously stating that Meyers was leading his witness Dammones; making Meyers "be quiet" and "interrupting [him] whenever he talked" (Objs. 9); and generally being hostile toward Meyers.  I have reviewed the transcript and find no evidence that Judge Hoppe improperly interfered with Meyers's ability to present his case.  Judge Hoppe properly stopped Meyers from asking leading questions of his own witnesses, Fed. R. Evid. 611(c), and Judge Hoppe appropriately considered that Meyers's use of leading questions to his own witnesses undermined their credibility. (Report 18.)

I also find no evidence that Judge Hoppe was hostile in any way.  To the contrary, the transcript reflects that Judge Hoppe was respectful toward Mr. Meyers throughout the proceedings.  Significantly, two full days were devoted to hearing evidence on Meyers's claims of imminent harm, and Meyers had ample opportunity to present his evidence.  Judge Hoppe did inform Meyers, before noon on the second day, that he was going to limit the time that each side had for witnesses to fifteen minutes, although he later expanded that to twenty minutes.  (Day 2 Tr. at 87–88, 118.)  He explained that the limit was necessary because there were five more witnesses to get through and Meyers kept spending his time in cross-examination on tangential (or sometimes irrelevant) matters.  As Judge Hoppe admonished him, he would have been better served by focusing his questioning on the events on which his own claims of imminent danger were based.  Judge Hoppe also noted, however, that if at the end of the time limit, the party could show that there were other relevant questions to be asked, he would consider extending the time. (Day 2 Tr. at 88.)  And for nearly every witness after that, Judge Hoppe permitted Meyers to go

beyond the time he had been given while he stayed on directly relevant topics.  (Day 2 Tr. at 98–99, 100–02, 129, 133, 156, 189.)

The Fourth Circuit has squarely held that "the district court has the authority in a civil case to limit the presentation of evidence by imposing overarching time limits on each party." *Raynor v. G4S Secure Sols. (USA), Inc.*, No. 18-1773, 2020 WL 917060, at *4 (4th Cir. Feb. 26, 2020); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").  Although time limitations should not be adopted as a "matter of course," they can be appropriate and are reviewed on appeal only for an abuse of discretion. *Raynor*, 2020 WL 917060, at *4.  In this case, Judge Hoppe imposed limits only *after* Meyers continued to devote time to tangential matters.  Moreover, Judge Hoppe did not strictly apply those limits, but instead repeatedly granted Meyers leeway to exceed them when he was focused on the substantive issues in the case.  Upon de novo review of the record, I believe these limitations were proper, and likely necessary to conduct the hearing efficiently.  I certainly see no error in imposing them.  Further—and significantly—Meyers has not identified any specific questions that he wanted to ask and was not permitted to ask, or any specific testimony he wanted to elicit, but was unable to.  Indeed, Meyers has not shown he was prejudiced at all by the time limitations.  Accordingly, the time limitations do not undermine the Report's conclusions in any way.

Likewise, Meyers's complaints about Judge Hoppe questioning witnesses also have no merit.  Judges are permitted to ask questions of witnesses.  *United States v. Manuel*, 616 F. App'x 72, 73 (4th Cir. 2015) (citing *United States v. Cassiagnol*, 420 F.2d 868, 877 (4th Cir.1970)); *see also* Fed. R. Evid. 611 (noting a trial court's authority to organize the mode and order of witnesses in order to make effective procedures for determining the truth).  And Meyers

has not even alleged, let alone shown, that any prejudice resulted from Judge Hoppe's questioning. *See Cassiagnol*, 420 F.2d at 877–78 (finding trial judge's questioning proper and noting the lack of prejudice to the complaining party).

Moreover, the record reflects that Judge Hoppe, through his questioning, repeatedly tried to elicit relevant testimony about Meyers's imminent danger allegations from witnesses, often after Meyers failed or refused to do so and had chosen instead to focus his time and efforts on other topics. In short, I find no error in Judge Hoppe's manner of conducting the hearing.

Meyers also objects to five specific evidentiary rulings, which I will address briefly: (1) not being permitted to introduce his entire grievance and PREA files, as well as his complete medical records, and relatedly, Judge Hoppe's alleged failure to obtain "an affidavit" stating that the medical records introduced were complete and had not been falsified (Objs. 1, 2); (2) the exclusion of Meyers's affidavits (Objs. 9), which he has attached to his objections; (3) Judge Hoppe's refusal to either require defendants to produce "stored video recordings" or to continue the hearing in order to allow Meyers to obtain those recordings; (4) the alleged exclusion of Operating Procedure 866.1, which relates to Meyers's request for the videos;[7] and (5) the striking of his questions toward Dr. Mullins.

First, as to the grievance and PREA files, Meyers was permitted to introduce over 70 pages from his grievance file, as relevant to the issue of notice. Judge Hoppe also informed Meyers that, if he believed certain grievances were missing and he needed them, then he could identify what those were and Judge Hoppe would direct defendants to provide them. But it was represented by defendants' counsel that Meyers's grievances filled two filing cabinets, and many of those would not be relevant to his claims of imminent danger. As such, Judge Hoppe

---

[7] A portion of the operating procedure (which generally governs grievances) document is attached as Dkt. No. 61-7, and it was discussed at the start of the second day. (Day 2 Tr. at 4–6.) Notably, Meyers offered to show the document to Judge Hoppe, but never expressly offered to move it into evidence. (*See id.*)

correctly ruled that not all of Meyers's grievances would be admissible, and Meyers refused to work with defendants to narrow down the universe of grievances. The same procedure was offered as to his PREA complaints and his medical file, although defendants' counsel represented that they had produced the entirety of those files. These topics received quite a lot of attention during the hearing and were revisited repeatedly. (*See, e.g.*, Day 1 Tr. at 10–16, 111–13, 132–144, 169; Day 2 Tr. at 4–8, 35.)

Having reviewed the transcripts, I conclude that Judge Hoppe's handling of this issue was proper. The Court is under no obligation to scour two file cabinets of documentation for Meyers to try to find support for his claims in the first instance, when Meyers himself was given multiple opportunities to identify any relevant missing grievances, and he failed to do so. Instead, he simply kept insisting he wanted his entire file introduced. Additionally, because the grievances that were admitted were admitted only for purposes of notice, it is difficult to see how any additional grievances would have altered the conclusion that he was not in imminent danger of serious physical injury.

Likewise, as to his medical records, Meyers claims that documents were missing, but has not identified what they were, other than a general reference to sick call slips at the hearing. As for his related argument that Judge Hoppe erred in refusing to require an "affidavit" stating the medical records produced were complete, he does not point out where in the hearing he made such a request. Regardless, such an affidavit was wholly unnecessary in light of Nurse Townsend's sworn testimony to that effect. (Day 2 Tr. at 168 (affirming, under oath, that the medical records introduced constituted Meyers's complete medical file for his time at Wallens Ridge and that no pages were missing from it, to her knowledge).)

The affidavits proffered by Meyers, attached to his objections, are all dated December 17, 2019, two days before the hearing. (*See* Dkt. Nos. 61-1 through 61-5 and 61-8.) Judge Hoppe

excluded these documents as exhibits. In doing so, he noted that Meyers had an opportunity to testify at length and that his own prior written statements, even under oath, were inadmissible. (Day 2 Tr. at 35–36.) Reviewing that decision de novo, I conclude that Judge Hoppe's evidentiary ruling was proper. "The prior consistent statements of a witness are, as a general proposition, inadmissible as substantive evidence." *United States v. Hedgepeth*, 418 F.3d 411, 422 (4th Cir. 2005). That rule is subject to only two exceptions, neither of which are applicable here. *See id.* (discussing the two exceptions).

Furthermore, based on a quick review of those affidavits, Meyers testified as to all, or nearly all, of the events referenced in them. Thus, there is no issue of his testimony having been excluded by the court; it was not. More significantly, Judge Hoppe found Meyers's testimony either flatly contradicted by other, more competent evidence or simply not believable, for the reasons explained in the Report and for reasons that I agree with, based on my de novo review of the record.

Third, with regard to the videos, defendants' counsel, as an officer of the court, advised that the videos for the dates identified by Meyers had already been overwritten, in the regular course of business, by the time Meyers requested them. And Meyers has not shown that he timely utilized the *proper* procedure to request that any video be maintained before it was destroyed. Regardless, given the fact that they did not exist at the time of the hearing, Judge Hoppe did not err in refusing to continue the hearing, nor did he err in not admitting evidence that does not exist. Meyers did not request a spoliation sanction.

Meyers's fourth evidentiary objection is related. It concerns the alleged exclusion of Operating Procedure 866.1 (which deals with grievances, but includes a statement about the retention of video footage if specific footage is requested in a grievance). But again, I find no error. Even assuming he offered it in to evidence (which is questionable), Meyers has not

explained how this evidence would have lent further support to his claims or supported his claims of imminent danger. Again, Meyers also has not shown any prejudice.

Fifth and finally, Meyers asserts that Judge Hoppe erred in striking his questions toward Dr. Mullins "on his Parkinson's disease," "incompetence[] and medical malpractice History." (Objs. 7.) The court concludes that these questions were properly struck because they were harassing questions or questions designed to embarrass the witness, and Meyers has not produced any independent evidence to show there was any good-faith basis for asking these questions. *See* Fed. R. Evid. 611 (directing the court to "exercise reasonable control over the mode and order of examining witnesses" so as to "protect witnesses from harassment or undue embarrassment"); *cf. United States v. Guay*, 108 F.3d 545, 552 (4th Cir. 1997) ("A cross-examiner inquiring into specific instances of a defendant's misconduct must have a good-faith factual basis for such questions."). Even if they had not been struck, moreover, the transcripts contain Dr. Mullins's answers to those questions, as discussed above. Those answers, all responding in the negative, would not have helped Meyers.

To summarize, and in light of the entirety of the record, I conclude that Judge Hoppe's evidentiary rulings were proper. Meyers simply has failed to show how any of these evidentiary rulings were wrong or, even if they were, how they would have affected the outcome of the imminent danger inquiry.

### 4. Objections to Miscellaneous Rulings Outside of the Hearing

Meyers also objects to Judge Hoppe's striking of various documents Meyers filed between November 2019 and February 2020, including his motion for preliminary injunction.[8] (Objs. 2) Many of these were struck because, after the case was referred to him for an

---

[8] Some of the documents filed by Meyers were struck because they violated the prior injunction against Meyers. (Dkt. No. 16.)

evidentiary hearing, Judge Hoppe entered an order directing that Meyers not file any documents in the case other than those ordered by the court, until after the Report was issued. (Dkt No. 16.)[9] As Judge Hoppe noted in that order, the issue of imminent danger is a threshold issue that must be determined to know whether Meyers can even proceed with his cases. Consideration of preliminary injunctive relief prior to that time was not appropriate, and Meyers cites to nothing that requires an opportunity to file written submissions in advance of an evidentiary hearing of this nature. Judge Hoppe also permitted Meyers to file documents that related directly to the conduct of the hearing and dealt with exhibits and witnesses and in fact held a pre-hearing conference call to address a number of issues raised in Meyers's filings. (Dkt. Nos. 35, 40.)

Meyers claims, though, that he was unable to present evidence as a result of that order. (Objs. 4.) The time for presenting evidence as to imminent danger was during the two full days for the hearing. Moreover, he utterly fails to explain how any of those filings constituted admissible evidence that he did not have the opportunity to present at the hearing.

Furthermore, the order explained that preventing Meyers from filing documents with the exception of those ordered by the court pending the Report was necessary for the court to "effectively manage its docket." (Dkt. No. 16.) As already noted, courts have an inherent ability to control their dockets. *Dietz*, 136 S. Ct. at 1892 ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). Judge Hoppe's order to limit Meyers's filings in this case, especially given Meyers's voluminous (and often frivolous) filings, was not erroneous or improper. Meyers cites to no authority and presents no arguments to the contrary.

---

[9] Meyers appealed that ruling directly to the Fourth Circuit, which dismissed his appeal for lack of jurisdiction because the order was not an appealable interlocutory order. (Dkt. No. 57.)

**D.      Miscellaneous "Objections"**

Although they do not relate directly to the Report's findings or conclusion, Meyers's objections also point to several events that allegedly happened during the course of the hearing or during breaks in the hearing.  First, he alleges that, after Judge Hoppe left the courtroom, one of defendants' attorneys "came from his side of the court from his table and stood over me debating on punching me in my face 30 or more times while I was being placed in handcuffs." (Objs. 6.)  It is not clear whether Meyers is alleging that counsel actually punched him, said something about punching him, or just conveyed that impression to Meyers.  This contention is not only vague and unsupported, but also is confined to a sentence and buried halfway through Meyers's ten single-spaced pages of objections.  I do not credit it.  But even if something actually happened or was said (which I believe is highly unlikely), Meyers has not shown how that affected the Report or how it undermines the findings or conclusions in the Report.

Second, he alleges that, during the hearing, the court reporter allegedly "yelled" at him "at the top of [her] lungs" to "Shut up!"  (Objs. 7, 8.)  Throughout the hearing, it appears that people were talking over each other, and Judge Hoppe asked Meyers several times not to interrupt him or talk over him.  (Day 1 Tr. at 111, 142; Day 2 Tr. at 205, 240, 255).  Additionally, on one occasion, the transcript reflects that the court reporter asked everyone to "stop" so she could make a record.  (Day 2 Tr. at 240.)  The transcripts do not contain any statement by the court reporter telling Meyers, "Shut up."  Like the alleged incident with opposing counsel, however, even if she had said that to Meyers, Meyers does not explain or show how that affected the Report's findings and conclusions, let alone renders them erroneous.

### III.  CONCLUSION

Having reviewed the Report, Meyers's objections, the transcripts and other pertinent portions of the record de novo, in accordance with § 636(b)(1), and any unobjected-to portions for clear error, I agree with Judge Hoppe's determination that Meyers was not under imminent danger of serious physical injury at the time he filed any of these complaints.  Accordingly, it is hereby **ORDERED** as follows:

1.  Meyers's recent motions (Dkt. Nos. 62 and 63) are **DENIED** as unnecessary;

2.  Meyers's objections to the Report are **OVERRULED**;

3.  The Report and Recommendation is **ADOPTED**;

4.  Meyers's motions to proceed *in forma pauperis* are **DENIED**;

5.  Because Meyers cannot proceed *in forma pauperis* and has not paid the filing fee in any of these cases, these actions are hereby **DISMISSED without prejudice** and the Clerk shall **STRIKE** them from the active docket of the court; and

6.  All other pending motions are **DENIED AS MOOT**.

The Clerk is directed to send copies of this order to Meyers and to all counsel who have entered an appearance in these cases.

**ENTER**: This 27th day of March, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE